UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DEL and CHERIE IRISH,               )
individually, and as a marital      )      NO. CV-05-134-LRS
community; and as guardian ad       )
litem of JANE DOE IRISH, a          )      ORDER
minor,                              )
                                    )
                Plaintiffs,         )
                                    )
        -vs-                        )
                                    )
WHITMAN COUNTY, a quasi-            )
municipal corporation,              )
                                    )
                Defendant.          )
                                    )

    Before the Court is the Defendant Whitman County's Motion for
Summary Judgment (Ct. Rec. 35); Defendant's Motion to Have Defendant's
Uncontroverted Facts Deemed Admitted Pursuant to LR 56.1(d) (Ct. Rec.
60); and Defendant's Motion to Strike Portions of Edward Mott's Affidavit
(Ct. Rec. 71).  A hearing was held November 9, 2006.  Michael Nelson
participated on behalf of the Plaintiffs; Michael McFarland participated
on behalf of Defendant.  This order is intended to supplement, confirm
and incorporate the provisions of the oral ruling rendered by the Court
at the close of argument at the aforementioned hearing.
///

ORDER - 1

## SUMMARY OF FACTS

In August 1997, Howard Banks was hired as a Corrections Officer for Whitman County Sheriff's Office. From December 26, 2003 through March 12, 2004, Banks was employed as a jailor at the Whitman County Jail. Banks worked the "graveyard" shift. In 1998, Howard Banks requested to bring his wife Jacqueline to work. Captain Ingalls authorized Banks to bring his wife to work but did not anticipate that this would be a frequent occurrence or request. Over the next couple of years, Banks made the request that he be allowed to occasionally bring his sons to work with him. Cpt. Ingalls gave him permission and did not anticipate this would be a frequent occurrence either. In approximately 2001, Cpt. Ingalls learned that a couple of graveyard officers had complained that Banks was abusing the permission Ingalls had given him to bring his wife to work. It was interfering with the performance of their jobs.

Cpt. Ingalls approached Banks and advised that he needed to have specific permission from the sergeants or Cpt. Ingalls for each visit. Thereafter, Banks did approach Cpt. Ingalls occasionally with requests for permission to bring visitors to work with him. Banks requested on separate occasions permission to bring in his wife, a nephew, a friend, and a niece, which was granted by Cpt. Ingalls.

In November 2003, the Irish family was introduced to the Banks family through mutual family friends, Larry and Carol Roberts. The introduction had no relationship or connection with Banks' employment.
///

ORDER - 2

The Irish and Banks families were neighbors.  Prior to December 26, 2003, Jane Doe Irish spent the night at the Banks' house on at least one occasion and began calling Howard Banks "dad" and Mrs. Banks "mom."

On December 26, 2003, Larry and Carol Roberts' daughter Christina asked Jane Doe Irish, her good friend, to go to work with Howard Banks and her at the Whitman County Jail.  This was the first time Jane Doe Irish went to work with Banks.  The Defendant County states that this visit was not authorized.[1]

After December 2003, Jane Doe Irish's parents began spending more and more time with Howard and Jacqueline Banks and loaned each other money, video games, and movies.  Commencing in January 2004, the Irish family hosted Mr. and Mrs. Banks for dinner approximately twice weekly and the Banks' hosted the Irish couple for dinner approximately once a week.  As the couples spent more and more time together so did Jane Doe Irish and she began going to the Banks' house "almost every day."

Jane Doe Irish even began spending the night at the Banks' house with some degree of frequency.  Commencing in February 2004 and continuing until April 8, 2004, Banks had sexual contact with Jane Doe Irish three or more times at his private residence.

Jane Doe Irish went to work with Banks three times during January 2004 and five times in February 2004.  Banks and the Defendant County

---

[1]Conflicting testimony is offered by Plaintiffs, relying on Howard Banks' deposition testimony.  See Attachment 5 of Ct. Rec. 49, Banks Dep., p. 38:12-17.  The Court finds, however, the disputed evidence does not materially alter the Court's analysis or preclude summary judgment.

indicate that these visits were not authorized and there is no evidence cited by Plaintiff to the contrary.  It is also undisputed that there was never any sexual conduct between Banks and Jane Doe Irish at the Whitman County Jail.

Shortly before March 12, 2004, Cpt. Ingalls learned that Banks had two minor female visitors with him at work without Ingalls' permission. At the time Ingalls had received the report regarding the two minor female visitors, he had no information that caused him to suspect that there was any inappropriate relationship going on between the girls and Banks.

On March 12, 2004, either Sheriff Myers or Undersheriff Rockness received a phone call from either Deputy Sergeant Chris Chapman or Captain Robert Ingalls regarding concerns received from Cherie Irish regarding the off-duty and possibly criminal behavior of Banks.  Cherie Irish requested a meeting to share her concerns about Banks' conduct directed at her minor daughter and one of her daughter's minor friends, Christina Roberts.  Sheriff Myers gave instructions to schedule a meeting immediately.  Sheriff Myers advised that he wanted Deputy Sergeant Myers and Captain Ingalls to attend the meeting.  Captain Ingalls contacted Whitman Prosecuting Attorney Denis Tracy and asked him to also attend the meeting.

On that same day, March 12, 2004, the meeting was held. Prosecuting Atty Tracy, Sgt. Chapman, and Cpt. Ingalls met with Cherie Irish, and a woman who accompanied Mrs. Irish to the meeting.  At this

ORDER - 4

meeting, Mrs. Irish expressed concern that Banks was "grooming" Jane Doe Irish and Christina Roberts, and that he may be having sexual contact with Ms. Roberts.   Mrs. Irish did not express concern that Banks was having sexual contact with her daughter, and stated she did not believe that there had been any such sexual contact.  The March 12, 2004 meeting was the first time Cpt. Ingalls and the Whitman County Sheriff's Office first learned of any allegations against Banks developing possible inappropriate contact by him with minors.

Shortly after the meeting, Sgt. Chapman and Deputy Eastep commenced an investigation into the allegations.   Both Sgt. Chapman and Deputy Eastep have training relating to  the investigation of sexual crimes and child abuse.   As part of the investigation, Sgt. Chapman and Deputy Eastep interviewed Jane Doe Irish, Christina Roberts, Tracy Deel, Jacqueline Banks and Howard Banks.   None of these witnesses reported any information indicating that Banks was having sexual contact with Jane Doe Irish and Jane Doe Irish adamantly denied any such sexual contact.   Thus after reviewing all of the evidence, Sgt. Chapman was unable to conclude that Banks had engaged in any criminal activity, and therefore closed the investigation as "unfounded."   Sgt. Chapman shared the results of the investigation with Prosecuting Atty Denis Tracy and Sheriff Myers. Sheriff Myers agreed with the conclusion to close the investigation.

On this same date, March 12, 2004, after learning from Cherie Irish that Banks brought unauthorized visitors to work with him, Sheriff Myers instructed Cpt. Ingalls to immediately put an end to the same, and to

document his directive to Banks in writing.  On March 15, 2004, Cpt. Ingalls met with Banks about having brought unauthorized visitors to work with him.  Cpt. Ingalls made it clear to Banks that he was to have no more visitors at work and gave him a written directive.

Jane Doe Irish never went to work with Banks after March 12, 2004. There is no evidence suggesting that Banks violated the oral and written directive  from Cpt. Ingalls.  Neither did he bring unauthorized visitors to the jail after March 12, 2004.

On July 7, 2004, at 12:09 a.m., almost four months later, Whitcom (sheriff's communications facility) radioed Sergeant Rick McNannay, advising that the Sheriff's Office received a call from Cherie Irish reporting that her 13 year old daughter, Jane Doe, had been raped.  Mrs. Irish requested that a deputy contact her.

After Cherie Irish's call, Sgt. McNannay immediately phoned Mrs. Irish at her residence and she advised that Banks had raped her daughter two or three times.  Sgt. McNannay made arrangements to contact Mrs. Irish and her daughter at their residence in Malden where he interviewed Jane Doe Irish who told him that Banks had raped her.

Deputy Mike Bogenreif and Sgt. McNannay thereafter proceeded to Banks' residence to speak to him.  Upon arrival, Jacqueline Banks told them that her husband Howard Banks had gone missing and that she was concerned he was suicidal.  Sgt. McNannay contacted Whitcom and had them put an "ATL" on Banks and his vehicle.

///

ORDER - 6

On July 10, 2004 at 12:00 p.m. Sgt. McNannay received a tip that Banks was at his residence. Sgt. McNannay drove to the residence and met with Banks and Mirandized him. Banks then confessed to having sexual contact with Jane Doe Irish. He was immediately arrested and transported to the Whitman County Jail where he was booked.

September 17, 2004, Banks pled guilty to two counts of Second Degree Rape of a Child. On January 14, 2005, Mrs. Banks pleaded guilty of one count of Second Degree Child Molestation arising from her contact with Jane Doe.

**IT IS ORDERED, ADJUDGED AND DECREED:**

1. Defendant's Motion to Have Defendant's Uncontroverted Facts Deemed Admitted Pursuant to LR 56.1(d), **Ct. Rec. 60**, is **GRANTED.** Plaintiffs did not oppose this motion.

2. Defendant's Motion to Strike Portions of Edward Mott's Affidavit, Ct. Rec. 71, is **GRANTED**. Certain portions of the affidavit were found to be inadmissible based upon their conclusory nature, their lack of relevance and/or the affiant's lack of demonstrated personal knowledge or speculation. Plaintiffs did not file briefing or present oral argument in opposition to this motion.

A) ¶4(A): "Deficiencies in the operational policies and procedures which lead to the use of the jail facility by a jailer to "groom" Jane Doe Irish . . .". <u>Finding</u>: The expert may not testify that these deficiencies led to the grooming of Jane Doe as this assertion is conclusory, speculative and without demonstrated foundation in fact; even if otherwise relevant, issue would be one for trier of fact in a proper case.

B) ¶4A: "deficiencies in the operational policies and procedures . . .[led to] the sexual assaults committed against her by [Howard Banks]." <u>Finding</u>: Statement is based on speculation without demonstrated

ORDER - 7

foundation in fact, and expert lacks the expertise to render such a decision. It should also be noted that Mr. Mott agreed, even under his view, it would be speculation to offer an opinion as to whether or not Banks would have sexually assaulted Jane Doe were he not a corrections officer.

C) ¶4(B): "this lack of policies, training, procedures and supervision continues . . . ." <u>Finding</u>: Not relevant nor based on personal knowledge.

D) ¶4(B): "....this lack of policies, training, procedures . . . will lead to foreseeable civil rights violations." <u>Finding</u>: Lack of demonstrated personal knowledge. The expert testified that he does not know of any civil rights violations or even what "civil rights violations" means.

E) ¶4(B): "....this lack of policies, training, procedures and supervision continues and demonstrates the deliberate indifference of the Whitman County Sheriff's Office . . . " <u>Finding</u>: Inadmissible legal conclusion.

F) ¶6: "These individuals . . . lacked the proper training and expertise to conduct such an investigation." <u>Finding</u>: Lack of demonstrated personal knowledge.

G) ¶7: "deficiencies in training, policies and supervision and procedures are pervasive and ongoing and constitute the custom and practice in operation of the Whitman County Sheriff's Office." <u>Finding</u>: Opinion based on speculation and lacking demonstrated personal knowledge.

3.   Defendant's Motion for Summary Judgment, **Ct. Rec. 35**, is **GRANTED**.

4.   A finding that a defendant acted under color of state law is not foreclosed by the defendant being off-duty at the time of the deprivation of rights. *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir.2001). However, because 42 U.S.C. § 1983 requires action taken under color of law, "it is clear that 'personal pursuits' of police officers do not give rise to section 1983 liability[.]" *Id.* at 548; *see also Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir.1998) ("Officers who engage in confrontations for personal reasons unrelated

ORDER - 8

to law enforcement, and do not 'purport or pretend' to be officers, do not act under the color of law." ).  The Court finds that viewing the facts most favorably to the plaintiffs, no reasonable jury could conclude that Banks was acting under the color of law when he met Jane Doe Irish, a twelve or thirteen year old neighbor who was the daughter of close family friends, developed a relationship with her apart from his employment and sexually assaulted her at his home.  Plaintiffs concede that at the time of the sexual misconduct which apparently occurred on several occasions over a two/three month period, Banks was off-duty, at his residence.  Moreover, there is no evidence to suggest that he was acting in his capacity as a corrections officer or forcing Jane Doe Irish to engage in such conduct based upon his authority as a county corrections officer.  Rather, the contact appears to have been wholly personal in nature, the source of which was not job-related or linked to his official capacity as a County employee.

5.  The Court rejects the § 1983 claim against the County because no official policy or pattern of constitutional violations has been shown so as to hold the County liable under the Court's reading of *Monell v Department of Social Services,* 436 US 658, 56 L Ed 2d 611, 98 S Ct 2018 (1978).  A mere failure by the County to supervise its employees, by itself, is not sufficient to hold it liable under § 1983.  Although the County could be held liable if the failure to supervise or the lack of a proper training program was so severe as to reach the level of "gross negligence" or "deliberate indifference" to the deprivation of the

ORDER - 9

plaintiff's constitutional rights, the evidence before this Court does not indicate this is the case.   Further, the concept of "deliberate indifference" does not hold the County at fault for the actions of its employees, on a respondeat superior basis--it holds the County liable for its own actions which result in deprivation of constitutional rights. Additionally, Plaintiffs indicated at the hearing they are not pursuing any state law negligence claim.   Accordingly, any state claim contained within the pleadings is also dismissed herewith.

6.   "Custom or policy" supporting recovery against a governmental entity under §1983 can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute "custom or usage" with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority; thus, "custom or policy" may be established by an allegation that the constitutional injury was caused by a person with final policymaking authority. 42 U.S.C.A. §1983. *Juniel v. Park Forest-Chicago Heights School Dist. 163*, 176 F. Supp. 2d 842 (N.D. Ill. 2001), *aff'd*, 46 Fed. Appx. 853, 169 Ed. Law Rep. 556 (7th Cir. 2002). Plaintiffs are unable to establish an official policy or custom. Plaintiffs allege generally a policy or custom of "inaction" – that the County failed to properly train or supervise both "correction officers" and "criminal investigators.   The evidence indicates, however, the staff

ORDER - 10

of the sheriff of Whitman County who were assigned to investigate Banks' alleged misconduct did have such training in the investigation of sex crimes.  As to the initial investigation by the County that failed to uncover Banks' sexual contact with Jane Doe, this does not itself evidence a policy or custom of inadequate training.  Based upon the interviews with the witnesses, and Jane Doe's adamant denial of any sexual contact (which was, at that time, joined in by Cherie Irish, Jane Doe's mother), it is not surprising that the earlier conduct remained undiscovered.

7.  Banks' prior misconduct occurring on the job (i.e., the occasion of bringing unauthorized guests to work and engaging in conduct which violated jail policies and procedures such as excessive TV watching, excessive sick leave) was not itself unconstitutional and/or highly indicative of future unconstitutional conduct.  In other words, Banks' conduct of occasionally bringing family members and friends to work with him as a jailer, with or without the permission of Cpt. Ingalls, cannot be said to be "highly predictive" that he would have illegal sexual conduct with minors off-duty, at his own home.  Moreover, Banks immediately stopped bringing outsiders to the jail when he was advised to cease and desist some three months or more before his off-duty criminal activity with Jane Doe Irish came to light.  Banks' conduct toward Jane Doe Irish was too outrageous for it to be considered foreseeable by the County.  Further, it is clear that Banks had no intention to further the County's interest but was motivated solely by

a desire to gratify his own personal interests.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Defendant and CLOSE the file.

**DATED** this 17th day of November, 2006.

                                        *s/Lonny R. Suko*

                                _____
                                        LONNY R. SUKO
                                UNITED STATES DISTRICT JUDGE

ORDER - 12